944 F.2d 900
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
BROADWAY & SEYMOUR, INCORPORATED, Plaintiff-Appellant,
v.
Donald E. WYATT, Defendant-Appellee.
 No. 91-2345.
 United States Court of Appeals, Fourth Circuit.
 Argued July 9, 1991.
Decided Sept. 13, 1991.
As Amended Oct. 28, 1991.
 
 Appeal from the United States District Court for the Western District of North Carolina, at Charlotte. Graham C. Mullen, District Judge. (CA-91-20-C-C-MU)
 Argued: Robert Walker Fuller, III, Robinson, Bradshaw & Hinson, P.A., Charlotte, N.C., for appellant; Karen Culbreth Poole, Mitchell & Rawlings, Charlotte, N.C., for appellee.
 On Brief: Allain C. Andry, IV, Robinson, Bradshaw & Hinson, P.A., Charlotte, N.C., for appellant; Richard M. Mitchell, Mitchell & Rawlings, Charlotte, N.C., for appellee.
 W.D.N.C.
 VACATED AND REMANDED.
 Before ERVIN, Chief Judge, and MURNAGHAN and SPROUSE, Circuit Judges.
 OPINION
 ERVIN, Chief Judge:
 
 
 1
 Broadway & Seymour, Inc. ("B & S") brought this action against its former employee, Donald E. Wyatt, to enforce a noncompetition provision in the parties' employment agreement. Wyatt and B & S entered into the agreement when Wyatt asked to move to Orlando, Florida from Charlotte, North Carolina and continue his employment with B & S. The agreement restricted Wyatt's ability to compete with B & S for six months and applied to the entire United States.
 
 
 2
 Thereafter, Wyatt accepted a sales manager position in New Jersey with GWB Technology, Inc., a B & S competitor. B & S brought this diversity action alleging a breach of the noncompetition clause of the agreement. B & S sought a preliminary injunction against Wyatt. The district court held a hearing on the preliminary injunction motion and then denied the motion. The court reasoned that North Carolina public policy would be violated if the parties' choice of Florida law was enforced. Then the court applied the four part balance of hardships test for injunctive relief and concluded that an injunction should not issue. B & S appealed to this court from the order denying the preliminary injunction motion. We find that the district court erred in concluding that North Carolina public policy would be violated if Florida law was applied to the agreement. Therefore, we vacate the order of the district court denying injunctive relief and remand to the district court for further proceedings.
 
 
 3
 * B & S is in the business of developing and marketing computer software. One of their primary product lines is accounting software for banks. B & S sells this software to banks throughout the United States and has customers in over 40 states. Wyatt began working for B & S in March 1988 as a sales representative for its bank accounting software products. At that time, Wyatt lived in Charlotte, North Carolina, where B & S's headquarters are located. Wyatt covered a midwestern sales territory with Charlotte as his home base.
 
 
 4
 In the fall of 1989, Wyatt and his wife were experiencing marital difficulties resulting in her moving to Orlando. At that time, Wyatt requested that he be allowed to move to Orlando and work his midwestern territory from that home base instead of Charlotte. B & S was hesitant to allow this because B & S had no office in Orlando and several direct competitors of B & S were located there in Orlando. Joint Appendix at 16. B & S was worried about additional costs for phone and delivery services and for flying Wyatt back to Charlotte for sales meetings. Id. In addition, B & S was concerned that Wyatt would be likely to leave B & S to work for a competitor once he moved to Orlando. Wyatt suggested that he would sign a noncompete agreement if B & S would allow him to work out of Orlando. Wyatt testified that his understanding was that the agreement would cover the Orlando based competitors. However, the agreement he actually signed covered the entire United States. The agreement contained a noncompetition clause which provided that it would be construed under the laws of Florida. The clause provided:
 
 
 5
 For so long as this Agreement is in effect and for a period of six (6) months following its termination, the Employee shall not directly or indirectly, either as principal, agent, manager, employee, owner, partner (general or limited), director or officer of a corporation, consultant, independent contractor or otherwise, in any way compete with, or assist any person competing with, the Community Banking Division of [B & S] by (a) approaching existing [B & S] accounts or potential accounts which [B & S] has contacted or with respect to which [B & S] has made a proposal, for the purpose of selling, licensing or providing competitive products or related services; or (b) otherwise competing with the Community Banking Division of [B & S] in the United States by engaging in the business of developing or licensing software which is designed primarily for the banking industry and which is similar to or competitive with existing or proposed [B & S] software (the "Competitive Software") or in providing services to customize, enhance, maintain or install such Competitive Software.
 
 
 6
 After moving to Orlando, Wyatt continued to service his midwestern accounts. In July 1990, B & S enlarged his territory to cover several southeastern states in addition to his old territory. Wyatt became unhappy in his job with B & S. He received an offer from GWB Technology, Inc. ("GWB") and told Jack Prim, his B & S supervisor, of this offer in December 1990. GWB is also in the banking software business, providing sales and marketing support to NCR, who sells systems directly to banking customers. Sometime in January or February 1991, Wyatt began working for GWB as their Vice President of National Sales and Marketing. B & S asserts as a result of his position with B & S, Wyatt had in his possession confidential business information of B & S, and that such information would be of "immeasurable" help to competitors such as GWB. Wyatt denies possessing such information.
 
 
 7
 B & S brought this action seeking to enforce the terms of the noncompetition agreement. B & S sought a preliminary injunction, which the district court refused to grant. The court first addressed what law governed the agreement, concluding that a North Carolina court would not enforce the parties' choice of Florida law because the application of Florida law would be contrary to North Carolina public policy and North Carolina had a materially greater interest in the case than Florida. The court then decided that an injunction should not issue under the four part balance of hardships test for granting injunctive relief. B & S appealed from the district court's ruling.
 
 II
 
 8
 A federal court sitting in diversity applies the substantive law of the state in which it sits, including the state's choice of law. See Klaxon Co. v. Stentor Elec. Mfg. Co., 313 U.S. 487 (1941). Therefore, we must apply North Carolina choice of law rules in this case.
 
 
 9
 As the district court noted, it is not clear whether North Carolina would apply Florida law as the parties agreed. The North Carolina cases have mixed results. See A.E.P. Industries, Inc. v. McClure, 308 N.C. 393, 302 S.E.2d 754 (1983); United Laboratories, Inc. v. Kuykendall, 322 N.C. 643, 370 S.E.2d 375 (1988); Bundy v. Commercial Credit Co., 200 N.C. 511, 157 S.E. 860 (1931).
 
 
 10
 In A.E.P. Industries, Inc. v. McClure, 308 N.C. 393, 302 S.E.2d 754, the covenant not to compete agreement provided for New Jersey law to govern the agreements. The North Carolina Supreme Court compared the North Carolina and New Jersey principles governing covenants not to compete and found them to have almost the same requirements. Id. at 402-03, 302 S.E.2d at 760-61. Therefore, the court found that New Jersey law would govern the agreement.
 
 
 11
 In United Laboratories, Inc. v. Kuykendall, 322 N.C. 643, 370 S.E.2d 375, the parties had agreed that Illinois law would control the covenant not to compete. The North Carolina Supreme Court applied Illinois law with no discussion whether it should apply the parties' choice of law or not.
 
 
 12
 In Bundy v. Commercial Credit Co., 200 N.C. 511, 157 S.E. 860, the North Carolina Supreme Court refused to apply the parties' choice of Delaware law. The court found that the Delaware law stipulation was immaterial because "the record d[id] not disclose that any transaction took place in Delaware or that the parties even contemplated either the making or the performance of the contract in said state." Bundy, 157 S.E. at 863.
 
 
 13
 The district court concluded that it should refer to the Restatement (Second) of Conflicts § 187 in the absence of clear guidance on how North Carolina would apply the choice of law in this case. The court did so on the theory that North Carolina would apply contemporary choice of law doctrines. See Barnes Group, Inc. v. C & C Products, Inc., 716 F.2d 1023, 1029 (4th Cir.1983). This application of the Restatement finds support in the North Carolina appellate case Behr v. Behr, 46 N.C.App. 694, 696, 266 S.E.2d 393, 395 (1980), in which the court cited § 187 of the Restatement.
 
 
 14
 Section 187 of the Restatement (Second) of Conflict of Laws provides:
 
 
 15
 (2) The law of the state chosen by the parties to govern their contractual rights and duties will be applied, even if the particular issue is one which the parties could not have resolved by an explicit provision in their agreement directed to that issue, unless either
 
 
 16
 (a) the chosen state has no substantial relationship to the parties or the transaction and there is no other reasonable basis for the parties' choice,
 
 
 17
 or
 
 
 18
 (b) application of the law of the chosen state would be contrary to a fundamental policy of a state which has a materially greater interest than the chosen state in the determination of the particular issue and which, under the rule of § 188, would be the state of the applicable law in the absence of an effective choice of law by the parties.
 
 
 19
 Restatement (Second) of Conflict of Laws § 187 (1971). The district court correctly concluded that the parties did have a reasonable basis for choosing Florida law since Wyatt would be basing his work out of that state. Therefore, Florida law should be applied unless the requirements of subsection (b) are met.
 
 
 20
 Subsection (b) has three requirements: (1) application of Florida law must be contrary to a fundamental policy of North Carolina; (2) North Carolina must have a materially greater interest than Florida in the determination of whether the covenant not to compete is valid; and (3) North Carolina law must apply in the absence of the choice of law provision in the agreement.
 
 
 21
 The third requirement is easily met. The general principle recognized in all jurisdictions including North Carolina is that the execution, interpretation, and validity of a contract are to be determined by the law of the state in which it is made. Tanglewood Land Co. v. Byrd, 299 N.C. 260, 262, 261 S.E.2d 655, 656 (1980); Bundy v. Commercial Credit Co., 157 S.E. at 863. Therefore, absent the agreement to the contrary, North Carolina law would apply because the contract was executed in North Carolina.
 
 
 22
 We must now determine whether the other two requirements of § 187 are met. First, we look at whether application of Florida law would be contrary to North Carolina public policy. Second, if we conclude that North Carolina public policy would be violated, then we must determine whether North Carolina has a materially greater interest in the matter.
 
 III
 
 23
 The district court gave two reasons for its conclusion that North Carolina public policy would be violated. The first was that North Carolina requires greater consideration than Florida does for a covenant not to compete when the covenant is executed after the initial period of employment. The second was that North Carolina applies a very strict blue pencil rule to the reasonableness of the time and territory restrictions while Florida applies a liberal blue pencil rule. We will address each of these considerations in turn.
 
 
 24
 * Under North Carolina law, a restrictive covenant must be supported by valuable consideration in order to be enforced. Collier Cobb & Associates, Inc. v. Leak, 61 N.C.App. 249, 252, 300 S.E.2d 583, 585, review denied, 308 N.C. 543, 304 S.E.2d 236 (1983). In addition, "when the relationship of employer and employee is already established without a restrictive covenant, any agreement thereafter not to compete must be in the nature of a new contract based upon a new consideration." James C. Greene Company v. Kelley, 261 N.C. 166, 168, 134 S.E.2d 166, 167 (1964); Kadis v. Britt, 224 N.C. 154, 163, 29 S.E.2d 543, 549 (1944). In contrast, under Florida law, the courts have held that covenants not to compete are founded on adequate consideration despite the fact that the employee worked for the employer before signing the covenant. See Criss v. Davis, Presser & La Faye, P.A., 494 So.2d 525, 526 (Fla.Dist.Ct.App.1986), review denied, 501 So.2d 1281 (Fla.1986); Tasty Box Lunch Co. v. Kennedy, 121 So.2d 52 (Fla.Dist.Ct.App.1960).
 
 
 25
 The district court found that Florida's requirement of consideration and North Carolina's requirement differed significantly. In the abstract, this is certainly true. However, on the facts before us, we do not believe that the result would be different under North Carolina and Florida law on the consideration question. For it appears to us that there was more than adequate consideration for the covenant not to compete even under North Carolina law. This is not the usual situation where North Carolina courts like to protect employees where the employer requires the employee who is already working to sign a covenant not to compete under threat of termination. See Kadis v. Britt, 224 N.C. at 163, 29 S.E.2d at 548. Here, Wyatt suggested the covenant not to compete. Wyatt asked for the transfer to Florida. The company did not benefit from Wyatt's move; instead, it incurred added costs of flying Wyatt back to Charlotte for meetings that he could have driven to had he continued to live in Charlotte. Joint Appendix at 16. In addition, the company did not need additional sales representatives based in the Florida area. Id. The agreement was instigated by Wyatt and inured almost solely to his benefit while B & S suffered detriments as a result of the agreement. B & S allowed Wyatt to transfer to Florida, incurred greater costs by so doing, and allowed him to continue to work his previous territory from there. We believe that these changes in the parties' relationship constituted adequate consideration under North Carolina law. See Whittaker Gen. Medical Corp. v. Daniel, 324 N.C. 523, 527, 379 S.E.2d 824, 827 (1989) (finding adequate consideration to support noncompete covenant entered into after employment relationship already established based on increased responsibilities and pay raise). Thus, we conclude that the courts of North Carolina would find that the consideration was adequate.
 
 B
 
 26
 The other reason the district court found for its conclusion that North Carolina public policy would be violated involves the concept of blue penciling. Blue penciling is a process whereby a court will rewrite a covenant not to compete which is unreasonable in its restrictions as to time and territory, thereby transforming the covenant into a reasonable one which is then enforced. Florida has a liberal policy of blue penciling. "If the trial court finds the provisions of a noncompetition agreement unreasonable, the court should modify the agreement and award an appropriate remedy." Sarasota Beverage Co. v. Johnson, 551 So.2d 503, 506 (Fla.Dist.Ct.App.1989) (quoting Xerographics, Inc. v. Thomas, 537 So.2d 140, 143 (Fla.Dist.Ct.App.1988)); Silvers v. Dis-Com Securities, Inc., 403 So.2d 1133, 1136 (Fla.Dist.Ct.App.1981).
 
 
 27
 In contrast, North Carolina has a very strict rule regarding blue penciling. See Welcome Wagon International, Inc. v. Pender, 255 N.C. 244, 120 S.E.2d 739, 742 (1961) (In North Carolina, "[t]he court is without power to vary or reform the contract by reducing either the territory or the time covered by the restrictions."). See also Henley Paper Co. v. McAllister, 253 N.C. 529, 535, 117 S.E.2d 431, 434-35 (1960) (noting that in North Carolina, courts may not blue pencil covenants, but that they "must stand or fall integrally"); Noe v. McDevitt, 228 N.C. 242, 45 S.E.2d 121 (1947) (refusing to blue pencil covenant territory in order to make the territory reasonable in scope).
 
 
 28
 The district court found that the difference between the blue penciling philosophies of the two states was great enough to conclude that North Carolina public policy would be violated if Florida law were applied to this agreement. However, the concept of blue penciling does not come into play unless we first conclude that the agreement would not be enforced as written under North Carolina law. If the agreement would be enforceable under North Carolina law as written, there would be no need to blue pencil, and the difference in blue pencil philosophies would be irrelevant. Thus, we must first determine whether the agreement would likely be enforced in North Carolina as written.
 
 
 29
 Wyatt challenges the reasonableness of the covenant not to compete regarding the scope of the territory restrictions.* Two North Carolina cases shed some light on this issue. The first is Harwell Enterprises, Inc. v. Heim, 276 N.C. 475, 173 S.E.2d 316 (1970). In Harwell Enterprises, the covenant not to compete prohibited the defendant from engaging in the business of silk screen processing or any other business providing products and services similar in nature to those of the plaintiff for two years. The defendant challenged the covenant as being too broad as to its territory restriction because it encompassed the entire United States. Id. at 478, 173 S.E.2d at 318. Evidence before the court indicated that the plaintiff company engaged in its business throughout the United States. Id. at 480, 173 S.E.2d at 319. The North Carolina Supreme Court stated that "to a company actually engaged in nation-wide activities, nation-wide protection would appear to be reasonable and proper." Id. at 481, 173 S.E.2d at 320. Thus, the court concluded that the covenant was enforceable. Id. at 481, 173 S.E.2d at 320.
 
 
 30
 Similarly, in Triangle Leasing Co. v. McMahon, 327 N.C. 224, 393 S.E.2d 854 (1990), the restrictive covenant prohibited the defendant from soliciting plaintiff's customers in North Carolina or in any state in which the company conducted business. The North Carolina Supreme court upheld the covenant as not unreasonable as to its territory restrictions. Id. at 227, 393 S.E.2d at 856.
 
 
 31
 In both Harwell Enterprises and Triangle Leasing, there was evidence before the court that the defendants had actively solicited the customers of the plaintiff in violation of the covenant not to compete. See Harwell Enterprises, 276 N.C. at 480, 173 S.E.2d at 319; Triangle Leasing, 327 N.C. at 225, 393 S.E.2d at 856. At this juncture in the case before us, we are unable to determine whether Wyatt has done the same. Wyatt denies soliciting B & S's customers in his affidavit. However, we need not resolve that issue today. Harwell Enterprises and Triangle Leasing are helpful to us for they show that the North Carolina courts may uphold national territory restrictions in covenants not to compete when the plaintiff company actually does business nationally.
 
 
 32
 In this case, evidence shows that B & S is a national company doing business in at least 40 states. Wyatt went to work for a competing company, GWB as their national marketing and sales manager. Thus, it is certainly possible that in his new position, Wyatt will be competing with his former employer in the national market. Whether he has actually done so is not clear from the record before us. However, we can conclude from the evidence before us that both of these companies operate nationally and that it was not unreasonable for B & S to seek nationwide protection in the covenant not to compete. As a result, we find that North Carolina would not find the nationwide scope of the covenant to be unreasonable on the facts in this case.
 
 
 33
 Since we find that North Carolina would enforce the nationwide scope of the covenant in this case, there is no need for us to address the blue penciling issue. The differences between North Carolina and Florida law regarding blue penciling are irrelevant where the covenant would be enforced as written in both states.
 
 IV
 
 34
 In summary, we conclude that the district court erred in determining that North Carolina public policy would be violated if the parties' choice of Florida law was enforced. We find that there was adequate consideration to support the covenant not to compete under North Carolina law. In addition, we find that North Carolina courts would not find the territory restrictions unreasonable under these facts. Thus, we find that North Carolina public policy would not be violated by applying the parties' choice of Florida law to the covenant not to compete. As a result of those conclusions, we need not address whether North Carolina has a materially greater interest in the outcome of the matter before us. Under Restatement (Second) of Conflict of Laws § 187(b), all three requirements must be met in order for North Carolina law to apply. We have found that the second requirement is not met in that North Carolina public policy would not be violated by application of Florida law. Thus, our inquiry is at an end, and Florida law should be applied in this case. Therefore, we hold that the district court erred in its refusal to apply Florida law to the covenant.
 
 V
 
 35
 The district court refused to grant an injunction in this case based upon its conclusion that Florida law should not be applied to the covenant. The court did so by applying the four part balance of hardships test for injunctive relief. In its balancing, the court applied North Carolina law to the covenant and determined that B & S would not likely succeed on the merits of the underlying case. Because we conclude that the court erroneously applied North Carolina law instead of Florida law, we need not address at this time the issue of whether the injunction was improperly denied. Instead, we vacate the district court's order refusing to grant injunctive relief, and we remand the case to the district court for further proceedings not inconsistent with this opinion.
 
 
 36
 VACATED AND REMANDED.
 
 
 37
 MURNAGHAN and SPROUSE, Circuit Judges, joined.
 
 
 
 *
 Wyatt does not challenge the reasonableness of the six month time restriction. His counsel conceded at oral argument that the six month period was probably reasonable