INMAN, Judge, concurring in part and dissenting in part.
I concur with the majority's holding that New Jersey law governs the enforceability of the Subcontract between US Chemical and Berto, including the forum selection clause incorporated by reference in the *387 Subcontract, so that US Chemical is prohibited from bringing its suit against Berto in North Carolina. However, I write separately to explain why New Jersey law applies, because its application to determine the validity of the forum selection clause is not dictated by the choice of law provision in the Subcontract. I dissent in part because I disagree with the majority's holding that Berto has not made sufficient minimum contacts with North Carolina to subject it to the jurisdiction of our courts.
I. Forum Selection Clause
We apply de novo review to the trial court's interpretation of a forum selection clause. Sony Ericsson Mobile Commc'ns. USA, Inc. v. Agere Sys. , 195 N.C.App. 577, 579, 672 S.E.2d 763, 765 (2009) (citation omitted). "Under a de novo review, the court considers the matter anew and freely substitutes its own judgment for that of the lower tribunal." Id . (internal quotation marks and citations omitted).
N.C. Gen. Stat. § 22B-3 provides, in pertinent part, that "any provision in a contract entered into in North Carolina that requires the prosecution of any action ... to be instituted or heard in another state is against public policy and is void and unenforceable." N.C. Gen. Stat. § 22B-3 (2015). Accordingly, if the Subcontract between US Chemical and Berto was made in North Carolina, the forum selection clause in the contract would be *723 void and unenforceable. On the other hand, if the Subcontract was made outside North Carolina, the statutory bar would not apply.
"The general principle recognized in all jurisdictions is that ordinarily the execution, interpretation and validity of a contract is to be determined by the law of the State or county in which it is made." Bundy v. Commercial Credit Co ., 200 N.C. 511, 516, 157 S.E. 860, 863 (1931). In Bundy , the defendant, a Maryland company, appealed from a jury verdict awarding the receiver of an insolvent North Carolina company compensation for interest charged and paid in violation of North Carolina's usury laws. Id. at 513-14, 157 S.E. at 861-62. The defendant argued that because the contract was entered into in Maryland, where the interest charged was lawful, the trial court applied the wrong law. Id. at 515-16, 157 S.E. at 862. The North Carolina Supreme Court, citing testimony presented before the trial court that the last signature on the contract was made in Baltimore, held that "it is clear that the contract was executed in Baltimore, Maryland, because the last act essential to the completion of the agreement was performed at that place." Id . at 515, 157 S.E. at 862. The Supreme Court further explained that
*388 the test of the place of a contract is as to the place at which the last act was done by either of the parties essential to a meeting of the minds. Until this act was done there was no contract, and upon its being done at a given place, the contract became existent at the place where the act was done.
Id. (internal quotation marks and citation omitted).
Although Bundy pre-dated N.C. Gen. Stat. § 22B-3, its reasoning has been followed in modern decisions interpreting forum selection clauses. In Szymczyk v. Signs Now Corp ., 168 N.C.App. 182, 187-88, 606 S.E.2d 728, 733 (2005), this Court upheld a Florida forum selection clause because the franchise agreement at issue was last signed by the defendant in Florida. "Just as in Bundy , the last act of signing the contract was an essential element to formation. As the contract was formed in Florida, N.C. Gen. Stat. § 22B-3 does not apply to the forum selection clause in the instant agreement." Id. at 187, 606 S.E.2d at 733.
Here, the trial court did not make a factual finding of where the contract was made, and the Subcontract does not indicate where it was signed. It appears on the face of the Subcontract that it was signed first by a representative of US Chemical on 1 October 2012 and last by a representative of Berto on 9 October 2012. Berto argues on appeal that because US Chemical's representative admitted in testimony before the trial court that no one from Berto ever came to North Carolina in connection with the Subcontract, this Court should determine on appellate review that the Subcontract was signed last outside of North Carolina. Ordinarily the issue of where a specific action-such as the signing of a document-occurred would seem to be factual and beyond the scope of review of this Court. However, in light of the holding in Bundy , which was explicitly based upon trial testimony, and the holding of Szymczyk , which followed Bundy and did not cite any factual finding by the trial court on this issue, I find Berto's argument compelling in the absence of any contrary evidence offered by US Chemical.
II. Minimum Contacts
Because I concur with the majority's holding that the forum selection clause incorporated by reference in the Subcontract precludes US Chemical from bringing suit alleging breach of the Subcontract against Berto in North Carolina, I believe it is unnecessary for this Court to reach the issue of personal jurisdiction. However, because the majority reaches that issue and holds that Berto had not made minimum contacts with North Carolina to subject it to the jurisdiction of our courts, I respectfully dissent.
*389 I would hold that Berto made sufficient minimum contacts with North Carolina to subject itself to the jurisdiction of our courts because Berto initiated contact with a North Carolina manufacturer and entered into an agreement for the North Carolina manufacturer to design and construct storage buildings and ship them from North Carolina to New York.
The trial court's finding that Berto's project manager contacted US Chemical in *724 North Carolina to propose the Subcontract is undisputed and binding on appeal. Berto's trial counsel admitted in argument to the trial court that "Berto researched the different potential subcontractors" approved by the Port Authority and then contacted US Chemical. US Chemical's representative testified before the trial court that at all relevant times, US Chemical has had only one manufacturing facility, in Wilkesboro, North Carolina. Because the most basic research of any manufacturing company to perform the Subcontract would include at least a cursory assessment of the manufacturing facility-i.e. , where the manufacturer would perform the vast majority of its contractual duties-the evidence presented to the trial court was competent and sufficient to support the trial court's finding that "[w]ith the defendant's knowledge, the plaintiff designed and constructed twelve hazmat and supply storage buildings at its plant in North Carolina pursuant to the subcontract."
Additional evidence before the trial court revealed that very little of the work performed pursuant to the Subcontract occurred outside of North Carolina. US Chemical's contractual duties did not include off-loading the shipment of storage buildings or installing the storage buildings. The only service performed by US Chemical on site at the Port Authority was to adjust shelving inside the buildings. Because I agree with the trial court's conclusion that the action arises out of services actually performed by US Chemical within North Carolina for Berto, and relates to goods and things of value shipped from North Carolina by US Chemical to Berto on Berto's order or direction, I would hold that Berto is subject to personal jurisdiction based on North Carolina's long-arm statute, N.C. Gen. Stat. § 1-75.4(5)(b) & (d) (2015). I also agree with the trial court's conclusion that Berto purposefully availed itself of the privilege of doing business in North Carolina and that its contacts with North Carolina were sufficient to satisfy the due process requirement of the United States Constitution.