IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA23-372

Filed 7 November 2023

Iredell County, No. 22CVS1518

CRAIG CLAPPER, Plaintiff,

v.

PRESS GANEY ASSOCIATES, LLC and AZALEA PARENT HOLDINGS, LP, Defendants.

Appeal by defendants from order entered 2 December 2022 by Judge David L. Hall in Iredell County Superior Court. Heard in the Court of Appeals 18 October 2023.

*Blanco Tackabery & Matamoros, PA, by Peter J. Juran, and Chad A. Archer, for the plaintiff-appellee.*

*Littler Mendelson, P.C., by Stephen D. Dellinger, and Elizabeth H. Pratt, for the defendants-appellants.*

TYSON, Judge.

Press Ganey Associates, LLC ("Press Ganey") and Azalea Parent Holdings, LP ("Azalea") (collectively "Defendants") appeal from the trial court's order denying their Rule 12(b)(3) motion to dismiss Craig Clapper's ("Clapper") complaint. We reverse the trial court's order and remand.

## I. Background

Press Ganey is an Indiana limited liability company, which is licensed to do

business in North Carolina. Azalea is a Delaware limited partnership with a principal place of business located in California.

Clapper entered into an employment agreement with Press Ganey on 1 September 2015. Press Ganey was in the process of entering into a Membership Interest Purchase Agreement between Press Ganey, Healthcare Performance Improvement, LLC ("HPI"), and the owners/members of HPI. Clapper was a member of HPI, and was "the sole employee of Craig Clapper LLC, an Arizona limited liability company[.]"

The exclusive Employment Agreement between Clapper and Press Ganey specified Clapper would perform "consulting services on behalf of HPI" and would have "executive-level duties, responsibilities, expectations, and authority." The Employment Agreement specified a three-year term ending on 31 August 2018, but was automatically extended for an additional one-year term, unless either party gave sixty days' prior written notice to terminate. Clapper and Press Ganey also agreed to bring "any disputes or controversies arising out of or relating to th[e] [Employment] Agreement" in Delaware and to submit to "the exclusive jurisdiction of federal and state courts" in Delaware in the Employment Agreement.

Azalea sought to amend its Initial Agreement to admit additional limited partners, including Clapper. Azalea executed an Amended and Restated Limited Partnership Agreement ("Azalea LP Agreement"), which provided a jury trial waiver and provisions specifying choice of law, venue, and submission to the jurisdiction of

Delaware. Clapper signed the agreement on 23 July 2019, while purportedly residing in North Carolina. Many other limited partners also signed the Azalea LP Agreement. Azalea's general partner signed the letter on 25 July 2021 while in Delaware.

Azalea sent Clapper a letter on 16 March 2020, in which Azalea intended to grant him equity shares in Azalea. Azalea and Clapper executed an agreement ("Grant Agreement") on 8 April 2020. The Grant Agreement provided Clapper would receive 26,851 time-vesting units (also referred to as "Class B Units"). The Class B Units were granted as non-cash compensation to retain qualified employees and operated as an "Incentive Equity Plan."

The time-vesting schedule vested the Class B Units on the following dates: (1) 14,500 units on 16 September 2021; (2) 9,666 units on 16 September 2022; and, (3) 2,685 units on 16 September 2023. The agreement also provided Azalea retained the right "to redeem all or any portion of the vested" units if Clapper's "employment terminate[d] for any reason[.]"

In consideration for the grant of Class B Units from Azalea, Clapper agreed to be bound by additional restrictive covenants. The fair market value at the time of transfer of the units was also listed as $0.00. If Clapper was terminated before all units vested, the unvested units would return to Azalea.

The Grant Agreement does not separately contain an express choice of law or forum selection clause, but it refers to and incorporates by reference the terms of the

Azalea LP Agreement, which contains provisions regarding choice of law, jury trial waiver, venue, and submission to the jurisdiction of Delaware.

Press Ganey instructed Clapper on 22 December 2020 to "resign from all positions as an officer and/or director (if any) of each of the entities of the Company and all of its respective affiliates" by 31 December 2020. Press Ganey also intended to transition Clapper to different employment tasks and to terminate Clapper's employment effective 30 September 2021.

Press Ganey, Azalea, and Clapper executed an Amendment to Employment Agreement, Transition Agreement, and Release and Waiver of Claims ("Termination Agreement") on 22 December 2020. The Termination Agreement provided Clapper would receive the 14,500 Class B Units on 16 September 2021, contained the Delaware choice of law and forum selection clauses, and also referenced the original Employment Agreement between Press Ganey and Clapper.

After Clapper's employment was terminated on 30 September 2021, Azalea sent Clapper a letter on 21 December 2021. Azalea intended to exercise its "Call Right" and purchase Clapper's remaining Class B Units and asserted:

> Pursuant to Section 3 of the Class B Unit Award Agreement between you and Azalea Parent Holdings LP (the "Partnership"), dated March 16, 2020 (the [Grant Agreement]), the unvested portion of your Class B Units are automatically forfeited without consideration upon termination of your employment with the Company. Following your termination of employment, you continued to hold 1,300.00 Class A Units and 7,250.00 vested Class B Units in the Partnership.

> Further, pursuant to Section 4 of the [Grant] Agreement and Section 10.1 of the Limited Partnership Agreement of Azalea Parent Holdings LP (the "LP Agreement"), this notice letter (the "Call Notice") hereby informs you that on December 21, 2021 the Partnership has elected to exercise its Call Right (as defined in the LP Agreement) with respect to your Class B Units that were vested at the date of your termination of employment. The "Call Price" as defined in the LP Agreement was $0.00 per Class B Unit as of the date the Partnership exercised its Call Right and, accordingly, pursuant to the terms of the LP Agreement these Class B Units respectively are redeemed for an aggregate Call Price of $0.00. As such, no payment will be made in regard to your vested Class B Units. For the avoidance of doubt, this Call Notice constitutes a "Call Notice" for purposes of the LP Agreement.

Clapper filed a complaint against Defendants in the Iredell County Superior Court on 23 June 2022. Clapper asserted claims for breach of contract, breach of the covenant of good faith and fair dealing, fraud, and violation of the North Carolina Wage and Hour Act ("NCWHA"). *See* N.C. Gen. Stat. §§ 95-25.1 to 95-25.25 (2021).

Defendants moved to dismiss Clapper's claims pursuant to Rule 12(b)(3), Rule 12(b)(6), and Rule 9 of the North Carolina Rules of Civil Procedure on 6 September 2022. *See* N.C. Gen. Stat. § 1A-1, Rules 9 and 12 (2021). Defendants' motions asserted Clapper brought his claims in the improper venue; dismissal was warranted because Clapper's claims arose under North Carolina law, which was violated the Delaware choice of law provisions in the contracts; and Clapper's fraud claim failed to contain the allegations in the requisite particularity, as required per Rule 9.

Defendants also moved to strike Clapper's jury demand pursuant to Rules 12(g) and (f).

The trial court granted Defendants' Rule 9 motion regarding Clapper's fraud claim and dismissed the claim without prejudice for Clapper to refile his fraud claim within thirty days. The trial court denied Defendants' motions regarding Rules 12(b)(3) and 12(b)(6). The trial court deferred ruling on Defendants' motion to strike the jury trial, but Defendants were allowed to renew their claim before the judge assigned to try the case. The trial court's order ruling on each of Defendants' motions was filed on 2 December 2022. The trial court's order does not contain a Rule 54(b) certification as immediately appealable.

Defendants timely filed a notice of appeal on 30 December 2022, seeking review of the trial court's denial of its 12(b)(3) motion to dismiss. Defendants also filed a Petition for Writ of Certiorari ("PWC") on 26 April 2023, seeking this Court to also hear its admittedly interlocutory denial of their Rule 12(b)(6) motion. N.C. R. App. P. 21.

## II.  Jurisdiction – Interlocutory Appeal

The trial court's order is interlocutory. "An interlocutory order is one made during the pendency of an action, which does not dispose of the case, but leaves it for further action by the trial court to settle and determine the entire controversy." *Bartley v. City of High Point*, 381 N.C. 287, 293, 873 S.E.2d 525, 532 (2022) (citation omitted). "As a general rule, interlocutory orders are not immediately appealable."

*Turner v. Hammocks Beach Corp.*, 363 N.C. 555, 558, 681 S.E.2d 770, 773 (2009) (citation omitted).

Interlocutory orders, however, can be immediately appealable "when the appeal involves a substantial right of the appellant[,] and the appellant will be injured if the error is not corrected before final judgment." *N.C. Dep't of Transp. v. Stagecoach Vill.*, 360 N.C. 46, 47-48, 619 S.E.2d 495, 496 (2005) (citations omitted). *See also* N.C. Gen. Stat. §§ 1-277(a) and 7A-27(b)(3)(a) (2021). "N.C. Gen. Stat. § 1-277 allows a party to immediately appeal an order that either (1) affects a substantial right or (2) constitutes an adverse ruling as to personal jurisdiction." *Wall v. Automoney, Inc.*, 284 N.C. App. 514, 519, 877 S.E.2d 37, 44-45 (2023) (citation and quotation marks omitted).

This Court has repeatedly held: "Although a denial of a motion to dismiss is an interlocutory order, where the issue pertains to applying a forum selection clause, our case law establishes that defendant may nevertheless immediately appeal the order because to hold otherwise would deprive him of a substantial right." *Hickox v. R&G Grp. Int'l, Inc.*, 161 N.C. App. 510, 511, 588 S.E.2d 566, 567 (2003); *Mark Grp. Int'l, Inc. v. Still*, 151 N.C. App. 565, 566 n.1, 566 S.E.2d 160, 161 n.1 (2002) ("[O]ur case law establishes firmly that an appeal from a motion to dismiss for improper venue based upon a jurisdiction or venue selection clause dispute deprives the appellant of a substantial right that would be lost.").

This Court possesses appellate jurisdiction to review the trial court's denial of

Defendants' Rule 12(b)(3) motion to dismiss. *Id.*; N.C. Gen. Stat. §§ 1-277(a) and 7A-27(b)(3)(a).

### III.    Issue – Improper Venue

Defendants argue the trial court improperly denied their Rule 12(b)(3) motion to dismiss for improper venue.

### A.  Standard of Review

"Our Court reviews an order denying a motion to dismiss for improper venue in such cases using the abuse of discretion standard." *SED Holding, LLC v. 3 Star Properties, LLC*, 246 N.C. App. 632, 636, 784 S.E.2d 627, 630 (2016) (citation omitted).

### B.  Analysis

"In general, a court interprets a contract according to the intent of the parties to the contract." *Cable Tel Servs., Inc. v. Overland Contr'g., Inc.*, 154 N.C. App. 639, 642, 574 S.E.2d 31, 33 (2002).

The enforceability of forum selection clauses that specify the parties' disputes must be litigated in another state's courts has varied in North Carolina case law. *Id.* ("Historically, North Carolina case law was unclear about the enforceability of forum selection clauses that fix venue in other states."). Our Supreme Court has stated: "Forum selection clauses do not deprive the courts of jurisdiction but rather allow a court to refuse to exercise that jurisdiction in recognition of the parties' choice of a different forum." *Johnston Cty. v. R.N. Rouse & Co.*, 331 N.C. 88, 93, 414 S.E.2d 30, 33 (1992).

> In recent years, there has been an abundance of state and federal cases enforcing forum selection clauses. The leading case in this area is *Bremen.* In *Bremen*, the United States Supreme Court [sic] enunciated a standard for the enforceability of forum selection clauses. The Court held that forum selection clauses are "prima facie valid and should be enforced unless enforcement is shown by the resisting party to be 'unreasonable' under the circumstances." The Court further held that the forum selection clause in the contract should be enforced "absent a strong showing that it should be set aside . . . [, a] show[ing] that enforcement would be unreasonable and unjust, or that the clause was invalid for such reasons as fraud or overreaching." Additionally, the Court held that a forum selection clause should be invalid if enforcement would "contravene a strong public policy of the forum in which suit is brought."

*Perkins v. CCH Computax, Inc.*, 333 N.C. 140, 144, 423 S.E.2d 780, 783 (1992) (internal citations omitted) (citing *M/S Bremen v. Zapata Off–Shore Co.*, 407 U.S. 1, 10, 15, 32 L.Ed.2d 513, 520, 523 (1972)).

After *Perkins,* our General Assembly enacted legislation regarding whether contracts *entered into within North Carolina* requiring litigation in a forum outside of North Carolina are enforceable: "any provision in a contract *entered into in North Carolina* that requires the prosecution of any action or the arbitration of any dispute that arises from the contract to be instituted or heard in another state is against public policy and is void and unenforceable." N.C. Gen. Stat. § 22B-3 (2021) (emphasis supplied).

This Court has addressed whether the subsequent enactment of N.C. Gen. Stat. § 22B-3 nullifies or limits our Supreme Court's holding in *Perkins*:

> While [N.C. Gen. Stat.] § 22B-3 clearly limits the holding in *Perkins*, the presumption of validity of forum selection clauses, i.e. the test requiring that a plaintiff seeking to avoid enforcement of a choice of governing law or forum clause entered into outside of North Carolina meet a "heavy burden and must demonstrate that the clause was the product of fraud or unequal bargaining power or that enforcement of the clause would be unfair or unreasonable," remains applicable.

*Parson v. Oasis Legal Fin., LLC*, 214 N.C. App. 125, 135, 715 S.E.2d 240, 246 (2011) (first quoting *Perkins*, 333 N.C. at 146, 423 S.E.2d at 784; then citing *Cox v. Dine-A-Mate, Inc.*, 129 N.C. App. 773, 501 S.E.2d 353 (1998); and then *Strategic Outsourcing, Inc. v. Stacks*, 176 N.C. App. 247, 625 S.E.2d 800 (2006)).

The initial inquiry regarding whether the holding in *Perkins* or N.C. Gen. Stat. § 22B-3 applies depends on where the contract was entered into. *Szymczyk v. Signs Now Corp.*, 168 N.C. App. 182, 187, 606 S.E.2d 728, 733 (2005) ("The threshold question for determining if the cont[r]act's forum selection clause violates North Carolina law, therefore, is a determination of where the instant contract was formed.").

This test was formulated ninety-two years ago:

> [T]he test of the place of a contract is as to the place at which the last act was done by either of the parties essential to a meeting of minds. Until this act was done there was no contract, and upon its being done at a given place, the contract became existent at the place where the act was done. Until then there was no contract.

*Bundy v. Commercial Credit Co.*, 200 N.C. 511, 515, 157 S.E. 860, 862 (1931)

(citations omitted).

This Court relied on *Bundy* when determining whether a contract was formed in Florida and *Perkins* applied:

> In *Bundy*, a contract negotiated by the North Carolina office of a Maryland company was not deemed existent until the final signature was made by the company's officers in Maryland. *Id.* at 514-15, 157 S.E. at 862.
>
> Here, the terms of the franchise agreement were discussed with representatives of defendant and a form agreement was signed by plaintiffs in North Carolina. The contract was then returned to Florida and defendant's president signed the agreement. Just as in *Bundy*, the last act of signing the contract was an essential element to formation. As the contract was formed in Florida, N.C. Gen. Stat. § 22B-3 does not apply to the forum selection clause in the instant agreement.

*Szymczyk*, 168 N.C. App. at 187, 606 S.E.2d at 733.

Here, the "last act" was committed in Delaware when Azalea's general partners signed the Azalea LP Agreement. *Id.* At the hearing held on 28 November 2022 regarding Defendants' motion to dismiss, Defendants' attorney explained:

> And as a result of that, because that is a Delaware company in which Mr. – in which [Clapper] [is a] member[ ], all parties are in Delaware. And there is nothing to indicate showing that the last act of that was done in North Carolina. In fact, if you look at those 153 pages [of the LP agreement] I just gave you, you will see that Mr. Clapper's signature is somewhere in the middle of that.

Although Clapper signed the agreement on 23 July 2019 while residing in North Carolina, Azalea's general partner did not sign the agreement until 25 July

2021 while located in Delaware. The Azalea LP Agreement provided a jury trial waiver and provisions specifying choice of law, venue, and submission to the jurisdiction of Delaware.

The Grant Agreement, which granted Clapper the Class B Units in Azalea, incorporated the terms of the Azalea LP Agreement. The final page of the Grant Agreement states: "I acknowledge the grant of the Granted Units and all of the terms and conditions set forth in this Agreement, the LP Agreement[,] and the Plan, the receipt of which I acknowledge." The Grant Agreement also required Clapper to acknowledge he had "reviewed the Agreement, the LP Agreement[,] and the Plan and have had the opportunity to raise any questions or concerns with the Company about the Granted Units." Clapper affixed his signature directly below that statement to bind his assent to the contract.

The "last act" was committed in Delaware, as opposed to North Carolina. *Bundy*, 200 N.C. at 515, 157 S.E. at 862. *Perkins* applies instead of N.C. Gen. Stat. § 22B-3. *Perkins*, 333 N.C. at 144, 423 S.E.2d at 783; *Parson*, 214 N.C. App. at 135, 715 S.E.2d at 246; *Szymczyk*, 168 N.C. App. at 187, 606 S.E.2d at 733. Defendants have shown the trial court erred by denying Defendants' Rule 12(b)(3) motion to dismiss. *See Szymczyk*, 168 N.C. App. at 187, 606 S.E.2d at 733.

## IV.    Conclusion

The trial court should have allowed Defendants' Rule 12(b)(3) motion to dismiss for improper venue. *See id.; Perkins*, 333 N.C. at 144, 423 S.E.2d at 783;

*Parson*, 214 N.C. App. at 135, 715 S.E.2d at 246; *Bundy*, 200 N.C. at 515, 157 S.E. at 862.  The trial court's order is reversed.

Defendants' successful Rule 12(b)(3) argument disposes of all of Clapper's claims against Defendants asserted in North Carolina's courts.  It is unnecessary to issue a writ of certiorari.  Upon remand, the trial court shall enter an order granting Defendants' Rule 12(b)(3) motion to dismiss without prejudice to Clapper bringing or asserting his claims against Defendants in an appropriate forum according to the Azalea LP Agreement.  *It is so ordered.*

REVERSED AND REMANDED.

Judge DILLON and Judge GRIFFIN concur.