■ JEROME SCHORR, Appellant, v THE GUARDIAN LIFE INSUR-
ANCE COMPANY OF AMERICA, Respondent, et al., Defendant. [843
NYS2d 24]—

Order, Supreme Court, New York County (Rolando T. Acosta,
J.), entered June 7, 2006, which granted defendant Guardian
Life's motion to dismiss the complaint for failure to state a
cause of action and sua sponte dismissed the claims against
nonmoving defendant Kadosh, modified, on the law, plaintiff's
claim for tortious interference with prospective business rela-
tions reinstated against both defendants, and otherwise af-
firmed, without costs.

Plaintiff failed to plead properly a claim for breach of the
implied covenant of good faith and fair dealing since he did not
demonstrate the existence of a valid contract from which such a
duty would arise (*American-European Art Assoc. v Trend Gal-
leries*, 227 AD2d 170 [1996]).

He did, however, properly plead a cause of action for tortious
interference with prospective business relations. The complaint
alleged that defendant Guardian Life interfered with plaintiff's
longstanding relationship with his client by utilizing "wrongful
means" to provide a quote for group insurance coverage to an-
other broker while declining to give a quote to plaintiff for the
same coverage. The wrongful means alleged are violations of
the Penal Law and the Insurance Law. This was sufficient to
satisfy the pleading requirements (*see Guard-Life Corp. v Par-
ker Hardware Mfg. Corp.*, 50 NY2d 183, 194 [1980]; *cf. NBT
Bancorp v Fleet/Norstar Fin. Group*, 87 NY2d 614, 624-625
[1996]).

The court failed even to consider the claim for tortious
interference with prospective business relations against the
nonmoving defendant, who did not appear on the motion, and
plaintiff was thus deprived of an opportunity to oppose any
arguments that might have been raised. Nevertheless, the court
inexplicably dismissed the complaint in its entirety. Concur—
Nardelli, J.P., Williams, Buckley and McGuire, JJ.

Catterson, J., dissents in a memorandum as follows: Because
I believe that both of plaintiff's claims should be reinstated, I
write separately.

The plaintiff, Jerome Schorr, a licensed independent insur-

ance broker, was appointed by the defendant Guardian as its agent for the purpose of selling its insurance products in 1973 pursuant to a brokerage agreement between Guardian and its general agent, Spaulder & Warshall, Ltd. (hereinafter referred to as S & W Agency).

In 1981, the plaintiff was appointed as the broker of record for Israel Aircraft Industries International, Inc.'s (hereinafter referred to as IAII) group life, medical and dental insurance coverage. In 1986, IAII appointed him as broker of record for the group life, medical and dental insurance coverage of its subsidiary, Commodore Aviation, Inc. (hereinafter referred to as CAI). In 2003, IAII appointed the plaintiff as broker of record for the group life, medical and dental insurance coverage of another subsidiary, Empire Aero Center, Inc. (hereinafter referred to as EAC).

In the meantime, in 1990, 1996 and 1998, the plaintiff signed three separate group insurance special producer compensation agreements with Guardian. Pursuant to these agreements, the plaintiff was entitled to receive additional compensation for selling Guardian group insurance plans, provided that he had at least five Guardian group plans in effect at a certain qualifying date.

In late 2003, IAII contacted the plaintiff and advised that for the coverage period commencing January 1, 2004, it wished to have new bids for all of its group life, medical and dental insurance coverages for all of its employees, as well as the employees of its subsidiaries. The plaintiff submitted materials he received from IAII, such as a September census of all of its employees, including the employees of its subsidiaries, to competing insurers for quoting purposes.

Thereafter, he received a "no quote" from Guardian for a combined group medical and life insurance coverage for IAII and its subsidiaries. Guardian informed the plaintiff that it could not provide a competitive bid because it lacked a network of physicians and other healthcare providers in the location of EAC's facilities in upstate New York. Thereafter, the plaintiff requested a quote limited to the employees of IAII, exclusive of its subsidiaries. In response, he received another "no quote." Guardian's sales representative explained in writing that Guardian could not compete with the pricing quoted by other insurance companies due to a 25% surcharge that its underwriters needed to apply to IAII business. The plaintiff, was, however, able to obtain a quote from Guardian for group dental coverage.

The plaintiff subsequently learned that another broker, defendant Itzhak Kadosh had met with representatives from IAII

in October or November 2003 and boasted that he could obtain better rates from Guardian than the plaintiff. IAII authorized Kadosh to obtain a quote from Guardian for its group coverage and provided him with the necessary materials, including a copy of the November census, a more recent version than the September census submitted by plaintiff.

Thereafter, Guardian, through John Feeney, one of its sales representatives in its Washington, D.C. office, provided a competitive quote to Kadosh for the group medical coverage. The plaintiff subsequently learned that the quote provided was, among other things, calculated without the 25% surcharge which Guardian had waived for Feeney and Kadosh.

The plaintiff alleges that Kadosh and/or Feeney falsified the census and that Guardian's underwriters knew or should have known that the census had been falsified since they were in possession of other renewal censuses from IAII that contradicted the census provided by Kadosh and/or Feeney. The plaintiff asserts that falsifying IAII's employee census was a violation of Insurance Law § 4224.

He further asserts that pursuant to Insurance Law §§ 2402 and 2403, a violation of section 4224 constitutes an unfair method of competition and/or a deceptive act or practice. In addition, the plaintiff asserts that waiving the surcharge improperly discounted Guardian's premium quotes in a discriminatory manner, in violation of Insurance Law § 4224.

As a result, IAII replaced its MetLife coverage previously procured by the plaintiff as broker with life insurance coverage from Guardian with Kadosh as broker. The plaintiff remained the broker for the medical insurance coverage of IAII and its subsidiaries for the 2004 coverage year since he had obtained quotes from other carriers that were still more competitive than the Guardian quote obtained by Kadosh. However, IAII revoked the plaintiff's authority to obtain future quotes from Guardian on its behalf and granted Kadosh the exclusive right to obtain such quotes.

The plaintiff subsequently lost IAII's medical and dental business for the 2005 coverage year after Kadosh was able to obtain extremely competitive quotes from Guardian. The plaintiff alleges that this was the direct result of the illegal activity engaged in by Kadosh and Feeney. He further alleges that IAII's 2006 renewal information confirmed that Guardian lost money on the IAII group medical and dental coverages for 2005 and 2006. He asserts that this "arrangement between Guardian and Kadosh" resulting in Guardian's loss of money "directly contravenes paragraph (g) of section 4235 of the New York In-

surance Law." He further asserts that "[b]ut for the effects of the scheme between defendants Kadosh and Guardian, [he] would not have lost the business of IAII and its subsidiaries and the substantial commissions derived therefrom."

On or about November 22, 2005, the plaintiff commenced the instant action for breach of the covenant of good faith and fair dealing, and for tortious interference with a prospective business relationship. Defendant Kadosh served an answer on or about January 11, 2006. In lieu of an answer, Guardian served a motion to dismiss pursuant to CPLR 3211 (a) (7) seeking an order dismissing the causes of action against it. In opposition to the motion, the plaintiff submitted an affidavit with exhibits, documenting his 33-year direct selling relationship with Guardian.

The court granted Guardian's motion, finding that there was no contract between the plaintiff and Guardian and thus, no implied duty of fair dealing between the two. The court further found that even if it could be found that the plaintiff and Guardian were parties to the 1973 agreement, there would still be no implied duty of fair dealing inasmuch as the agreement expressly stated that it could be terminated at any time by either party and thus was terminable at will.

With regard to the plaintiff's claim for tortious interference with prospective business relations, the court found that the plaintiff failed to state a cause of action. Specifically, the court stated "that Guardian would be a party to the prospective business relations and 'only a stranger to a contract, such as a third party, can be liable for tortious interference with a contract.' "

In my view, the motion court erred for the following reasons: The plaintiff properly pleaded a claim for breach of the implied covenant of good faith and fair dealing since he sufficiently alleged the existence of a series of valid contracts from which such duty would arise. (*Cf. American-European Art Assoc. v Trend Galleries*, 227 AD2d 170 [1996].) The plaintiff stated in his affidavit that since his appointment as an agent for Guardian in 1973, he has always communicated directly with Guardian's sales representatives. He submitted all requests for quotes exclusively to Guardian sales executives who issued all quotes, or refusals to quote, directly to him. All Guardian policies were issued to him for delivery to his clients and all matters having to do with those policies have been handled directly by the plaintiff and Guardian's sales representatives. All renewal quotes and all other renewal matters relating to Guardian policies issued to the plaintiff's clients have also been handled exclusively by the plaintiff and Guardian's sales representa-

tives. Thus, the plaintiff maintained that he and Guardian had a direct selling relationship for more than 30 years.

The plaintiff also submitted a printout of his listing with the National Insurance Producer Registry which, he maintains, evidences his appointment by Guardian as its agent within New York State as well as copies of the special producer compensation agreements which he entered into with Guardian. Furthermore, the at-will character of the agreements is not relevant here since none of the agreements between Guardian and the plaintiff were ever terminated.

The plaintiff also properly pleaded a cause of action for tortious interference with prospective business relations, which required the plaintiff to show: (1) the existence of a business relationship between the plaintiff and a third party; (2) the defendants' interference with that business relationship; (3) that the defendants acted with the sole purpose of harming the plaintiff or used dishonest, unfair, improper or illegal means that amounted to a crime or an independent tort; and (4) that such acts resulted in the injury to the plaintiff's relationship with the third party. (*Carvel Corp. v Noonan*, 3 NY3d 182, 189 [2004]; *NBT Bancorp v Fleet/Norstar Fin. Group*, 87 NY2d 614 [1996]; *Guard-Life Corp. v Parker Hardware Mfg. Corp.*, 50 NY2d 183 [1980].)

In this case, the complaint alleged that defendant Guardian interfered with the plaintiff's longstanding relationship with his client, IAII, by utilizing "wrongful means" to provide a quote for group insurance coverage to another broker while declining to give a quote to the plaintiff for the same coverage. The wrongful means alleged may constitute violations of the Penal Law and the Insurance Law. The motion court also erred in its finding that no tortious interference existed since Guardian was a party to the insurance policies interfered with and thus could not tortiously interfere with its own policies.

As the plaintiff properly asserts, here the business relationship interfered with by the defendants Guardian and Kadosh was the relationship that existed between himself (as broker of record) and IAII (as his client)—not the relationship between IAII (insured) and Guardian (one of several potential insurers). Thus, I believe this was sufficient to satisfy the pleading requirements.

Moreover, the record confirms that each time that the defendants' tortious interference caused IAII to shift its respective life, medical and dental policies from the plaintiff as broker of record to Kadosh as broker of record, Guardian was not the insurer for the group policy at issue. Specifically, at the time

that IAII accepted the Guardian group life quote that Kadosh obtained from Guardian for upcoming coverage year 2004, Guardian was not the insurer on the 2003 group life policy. Rather, at the time in question, the 2003 group life insurance contract was between MetLife and IAII (and its subsidiaries), with the plaintiff as broker of record, thus, Guardian was not a party to the contract in which it interfered.

Finally, the court failed to even consider the claim for tortious interference with prospective business relations against the nonmoving defendant, who did not appear on the motion. The plaintiff was thus deprived of an opportunity to oppose any arguments that might have been raised. Nevertheless, the court inexplicably dismissed the complaint in its entirety. For the foregoing reasons, I believe that the plaintiff's claims should be reinstated against both the defendants.