Sloan v. Inolife Techs., Inc., 2017 NCBC 44.

| | |
|---|---|
| STATE OF NORTH CAROLINA | IN THE GENERAL COURT OF JUSTICE SUPERIOR COURT DIVISION |
| FORSYTH COUNTY | 17 CVS 306 |

NORMAN L. SLOAN; JOHN T. ROOT; CANDACE A. TRUMBULL; CANDACE WERNICK; WONEEYA THUNDERING HAWK; and BIZROBE TRUST, BY ITS TRUSTEE DOUBLEBENT, LLC,

        Plaintiffs,

v.

INOLIFE TECHNOLOGIES, INC.; MANHATTAN TRANSFER REGISTRAR COMPANY; MTRCO; and JOHN CHARLES AHEARN, III,

        Defendants.

-and-

INOLIFE TECHNOLOGIES, INC.,

        Counterclaimant,

v.

CANDACE A. TRUMBULL,

        Counterclaim-Defendant.

-and-

INOLIFE TECHNOLOGIES, INC.,

        Third-Party Plaintiff,

v.

**ORDER AND OPINION ON DEFENDANTS' MOTION TO DISMISS AND FOR ATTORNEYS' FEES**

GARY BERTHOLD,

Third-Party
Defendant.

1. **THIS MATTER** is before the Court on Defendants' motion to dismiss (the "Motion to Dismiss") and motion for attorneys' fees (the "Motion for Attorneys' Fees") (collectively, the "Motions"). For the reasons set forth below, the Court **GRANTS in part** the Motion to Dismiss and **DISMISSES with prejudice** Plaintiffs' claim for damages and **DISMISSES without prejudice** Plaintiffs' claim for breach of the implied covenant of good faith and fair dealing, and **GRANTS** the Motion for Attorneys' Fees. The Court **DENIES as moot** the Motion to Dismiss as to Plaintiffs' claims for attorneys' fees and costs and unfair and deceptive trade practices.

*Norman L. Sloan, for Plaintiffs.*

*Parker Poe Adams & Bernstein LLP, by Eric H. Cottrell, Matthew H. Mall, W. Edward Poe, Jr., and Katherine H. Graham, for Defendants.*

Robinson, Judge.

## I.    PROCEDURAL HISTORY

2. The Court sets forth here only those portions of the procedural history relevant to its determination of the Motions.

3. Plaintiffs initiated this action by filing their complaint on January 17, 2017. Plaintiffs' complaint brought a declaratory judgment action and moved for a temporary restraining order and preliminary injunction.

4. On January 17, 2017, the court, per the Honorable Todd Burke, entered a Temporary Restraining Order.

5.      This case was designated as a mandatory complex business case by order of the Chief Justice of the Supreme Court of North Carolina dated January 19, 2017 and assigned to the undersigned by order of Chief Business Court Judge James L. Gale that same day.

6.      On February 3, 2017, the Court held a hearing on Plaintiffs' motion for a preliminary injunction, which the Court denied by order dated February 9, 2017.

7.      On March 7, 2017, Plaintiffs filed their Amended Complaint pursuant to Rule 15(a) of the North Carolina Rules of Civil Procedure ("Rule(s)"). In addition to a declaratory judgment action, the Amended Complaint asserts the following claims for relief: unjust enrichment, damages, conversion, attorneys' fees and costs, unfair and deceptive trade practices in violation of N.C. Gen. Stat. § 75-1.1 (the "UDTP claim"), breach of the implied covenant of good faith and fair dealing, and punitive damages. (Am. Compl. 10−14.)

8.      On April 6, 2017, Defendants filed the Motions and their supporting brief. The Motion to Dismiss seeks dismissal pursuant to Rule 12(b)(6) of Plaintiffs' damages claim, attorneys' fees and costs claim, UDTP claim, and breach of the implied covenant of good faith and fair dealing claim. The Motion for Attorneys' Fees seeks Defendants' attorneys' fees incurred in defending against Plaintiffs' UDTP claim pursuant to N.C. Gen. Stat. § 75-16.1.

9.      On April 17, 2017, Plaintiffs voluntarily dismissed without prejudice their claim for attorneys' fees and costs and the UDTP claim. As a result, to the extent the Motion to Dismiss seeks dismissal of those claims, the Motion to Dismiss is moot.

10. The Motions have been fully briefed, and the Court held a hearing on the Motions on May 15, 2017. The Motions are now ripe for resolution.

## II. FACTUAL BACKGROUND

11. The Court does not making findings of fact on the Motion to Dismiss under Rule 12(b)(6), but only recites those factual allegations of the Amended Complaint that are relevant and necessary to the Court's determination of the Motion to Dismiss.

12. Defendant Inolife Technologies, Inc. ("Inolife") is a New York corporation with its principal place of business in Orange County, California. (Am. Compl. ¶ 8.)

13. Defendant Manhattan Transfer Registrar Company ("Manhattan Transfer") is a Colorado corporation with its principal place of business in Boulder County, Colorado. (Am. Compl. ¶ 9.) Manhattan Transfer is Inolife's transfer agent. (*See* Am. Compl. ¶¶ 19, 24.)

14. Defendant John Charles Ahearn III ("Ahearn") is the president of Manhattan Transfer. (Am. Compl. 1.)

15. Defendant MTRCO is a Colorado corporation with its principal place of business in Boulder County, Colorado. (Am. Compl. ¶ 10.) MTRCO is an affiliate of Manhattan Transfer. (Am. Compl. ¶ 10.)

16. On or about February 5, 2014, Inolife's Board of Directors (the "Board") filed a Certificate of Amendment of the Certificate of Incorporation of Inolife (the "2014 Amendment") pursuant to N.Y. Bus. Corp. § 805. (Am. Compl. ¶ 18, Ex. 1.) The 2014 Amendment increased the number of Inolife's authorized shares to 5.1 billion and

designated 100 million authorized shares as Preferred Shares and 5 billion authorized shares as Common Shares, both with par value of $0.00001 per share. (Am. Compl. Ex. 1, at 2.)

17.     The 2014 Amendment designated 50 million authorized Preferred Shares as Series B Preferred Stock.  (Am. Compl. Ex. 1, at 5.)  With respect to the conversion rights of holders of Series B Preferred Stock, the 2014 Amendment provides the following:

> a) Each share of Series B Preferred Stock shall be convertible . . . into the number of shares of [Inolife]'s Common Stock, par value $0.00001 per share, equal to the price of the Series B Preferred Stock, divided by the par value of the Common Stock . . . . Such conversion shall be deemed to be effective on the business day (the "Conversion Date") following the receipt by [Inolife] of written notice from the holder of the Series B Preferred Stock of the holder's intention to convert the shares of Series B Stock, together with the holder's stock certificate or certificates evidencing the Series B Preferred Stock to be converted.

(Am. Compl. Ex. 1, at 5.)

18.     The 2014 Amendment designated 10 million authorized Preferred Shares as Series D Preferred Stock. (Am. Compl. Ex. 1, at 9.) The 2014 Amendment provides holders of Series D Preferred Stock with the same conversion rights as holders of Series B Preferred Stock, subject to the same prerequisites for conversion.  (Am. Compl. Ex. 1, at 10.)

19.     Plaintiffs were each issued shares of either Series B Preferred or Series D Preferred Stock.  Plaintiffs allege that, on April 14, 2014, the Board adopted a resolution (the "2014 Resolution") directing Inolife to issue 40,000 shares of Series B Preferred Stock to Plaintiffs Woneeya Thundering Hawk ("Hawk"), Norman L. Sloan

("Sloan"), and John T. Root ("Root") and that on June 2, 2014, Inolife issued the shares to each of them. (Am. Compl. ¶ 19, Ex. 2.)

20. On December 30, 2014, Inolife issued Plaintiff Candace Wernick ("Wernick") 40,000 shares of Series B Preferred Stock. The Amended Complaint is silent on the mechanism or authority pursuant to which these shares were issued. (Am. Compl. ¶ 19.)

21. On March 26, 2015, the Board adopted a resolution (the "2015 Resolution") directing Inolife to issue Plaintiff Candace A. Trumbull ("Trumbull") 44,000 shares of Series B Preferred Stock, which shares were issued that same day. (Am. Compl. ¶ 19, Ex. 3.)

22. Hawk, Sloan, Root, Wernick, and Trumbull were issued shares of Preferred Stock in exchange for services provided to Inolife. (Am. Compl. ¶ 19.) Defendants have refused to issue stock certificates representing Plaintiffs' shares of Series B Preferred Stock. (Am. Compl. ¶ 19.)

23. Third-Party Defendant Gary S. Berthold ("Berthold") transferred 10 million shares of Series D Preferred Stock to Plaintiff Bizrobe Trust ("Bizrobe") on December 16, 2015. (Am. Compl. ¶ 24, Ex. 5.)

24. On or about February 25, 2016, the Board filed two Certificates of Amendment of the Certificate of Incorporation of Inolife. (Am. Compl. ¶¶ 25–26, Exs. 6–7.) One such amendment provides, in relevant part, that "[t]he Series D Preferred shares once issued from [Inolife] to a recipient are not available to be cancelled or diluted." (Am. Compl. Ex. 7, at 2.)

25. On July 5, 2015, all shares of Inolife's Preferred Stock were cancelled. (Am. Compl. ¶ 31, Ex. 11.) Plaintiffs were not notified of the cancellation of their preferred shares. (Am. Compl. ¶ 32.) Plaintiffs allege that Inolife had no authority to cancel these shares. (Am. Compl. ¶ 33.) Plaintiffs contend that Inolife falsely represented that it cancelled its preferred shares in order to enhance its position with 8687544 Canada, Inc., with whom Inolife entered into a merger agreement that became effective in August 2016. (Am. Compl. ¶ 36.)

26. On October 18, 2016, Sloan, on behalf of Bizrobe, directed a written request to Inolife's president and Ahearn for the conversion of 10 million shares of Series D Preferred Stock into 5 trillion shares of Common Stock. (Am. Compl. Ex. 8.)

27. On October 28, 2016, Randall J. Lanham ("Lanham"), as counsel for Inolife, responded by letter to Sloan's request for conversion of Bizrobe's Preferred Stock into Common Stock. (Am. Compl. ¶ 28, Ex. 9.) Lanham's letter stated that Inolife "does not have any records of [Bizrobe] as a shareholder and or debt holder and there is no valid issuance of Preferred Series D Stock, and we confirm there are no Preferred Series D issued and or [sic] outstanding." (Am. Compl. Ex. 9.) The letter further stated that Inolife was "investigating several corporate irregularities and potential infractions of securities law, which could result in fraud charges against previous officers and or [sic] directors of [Inolife.]" (Am. Compl. Ex. 9.)

28. On November 9, 2016, Trumbull directed a written request to Inolife's president and Ahearn for the conversion of 100 million shares of Series B Preferred

Stock into 500 million shares of Common Stock. (Am. Compl. ¶ 20; Pls.' Br. Supp. Mot. Prelim. Inj. Ex. A, at 2.)

29. On November 14, 2016, Root and Sloan directed separate written requests to Inolife's president and Ahearn for the conversion of each of their 40,000 shares of Series B Preferred Stock into the appropriate number of shares of Common Stock. (Am. Compl. ¶ 20; Pls.' Br. Supp. Ex. A, at 4–5.)

30. On January 6, 2017, Wernick made a request, by e-mail to Inolife's president and Ahearn, for the conversion of 40,000 shares of Series B Preferred Stock into the appropriate number of shares of Common Stock. (Am. Compl. ¶ 20; Pls.' Br. Supp. Ex. A, at 3.)

31. Plaintiffs' requests for conversion of Series B Preferred and Series D Preferred Stock into Common Stock were not complied with. (Am. Compl. ¶ 21.)

32. Plaintiffs bring a declaratory judgment action and assert claims against Defendants for unjust enrichment and quantum meruit, damages, conversion, breach of the implied covenant of good faith and fair dealing, and punitive damages. (Am. Comp. 10–14.) The Motion to Dismiss seeks dismissal of Plaintiffs' claims for damages and breach of the implied covenant of good faith and fair dealing. The Motion for Attorneys' Fees seeks Defendants' attorneys' fees incurred in defending against Plaintiffs' UDTP claim.

### III. MOTION TO DISMISS

33. In ruling on a motion to dismiss pursuant to Rule 12(b)(6), the Court reviews the allegations of the Amended Complaint in the light most favorable to

Plaintiffs. The Court's inquiry is "whether, as a matter of law, the allegations of the [amended] complaint, treated as true, are sufficient to state a claim upon which relief may be granted under some legal theory, whether properly labeled or not." *Harris v. NCNB Nat'l Bank of N.C.*, 85 N.C. App. 669, 670, 355 S.E.2d 838, 840 (1987). The Court construes the Amended Complaint liberally and accepts all allegations as true. *Laster v. Francis*, 199 N.C. App. 572, 577, 681 S.E.2d 858, 862 (2009).

34. Dismissal of a claim pursuant to Rule 12(b)(6) is proper "(1) when the [amended] complaint on its face reveals that no law supports [the] claim; (2) when the [amended] complaint reveals on its face the absence of fact sufficient to make a good claim; [or] (3) when some fact disclosed in the [amended] complaint necessarily defeats the . . . claim." *Oates v. JAG, Inc.*, 314 N.C. 276, 278, 333 S.E.2d 222, 224 (1985); *see also Jackson v. Bumgardner*, 318 N.C. 172, 175, 347 S.E.2d 743, 745 (1986). Otherwise, "a[n amended] complaint should not be dismissed for insufficiency unless it appears to a certainty that plaintiff is entitled to no relief under any state of facts which could be proved in support of the claim." *Sutton v. Duke*, 277 N.C. 94, 103, 176 S.E.2d 161, 166 (1970) (emphasis omitted).

## A. **Damages Claim**

35. Plaintiffs' damages claim, contained in paragraphs 47 and 48 of the Amended Complaint, states merely that "Plaintiffs are entitled to payment for their damages in an amount to be proven at a trial of this matter." (Am. Compl. ¶ 48.) Defendants argue that Plaintiffs' damages claim should be dismissed because there is no independent cause of action under relevant law for damages. (Defs.' Br. Supp.

Mot. Dismiss & Att'y Fees 13.) In their response brief, Plaintiffs did not contest the Motion to Dismiss the damages claim.

36. "The word 'damages' is defined as compensation which the law awards for an injury[;] 'injury' meaning a wrongful act which causes loss or harm to another." *Heron Bay Acquisition, LLC v. United Metal Finishing, Inc.*, 781 S.E.2d 889, 894 (N.C. Ct. App. 2016) (alteration in original) (quoting *Tyll v. Berry*, 234 N.C. App. 96, 109, 758 S.E.2d 411, 420 (2014)).

37. In each of Plaintiffs' claims for unjust enrichment, conversion, and breach of the implied covenant of good faith and fair dealing, Plaintiffs include an allegation that they have been damaged as a proximate result of Defendants' alleged misconduct. (Am. Compl. ¶¶ 46, 53, 66.) In addition, the Prayer for Relief of the Amended Complaint expressly requests that "Plaintiffs have and recover of the Defendants a sum in excess of the amount of $25,000 in compensatory damages . . . ." (Am. Compl. 16.) If Plaintiffs ultimately prevail on such claims, then they have clearly alleged their entitlement to recover their damages resulting from those injuries. *See Rodd v. W. H. King Drug Co.*, 30 N.C. App. 564, 568, 228 S.E.2d 35, 38 (1976) ("General damages are the natural and necessary result of the wrong, are implied by law, and may be recovered under a general allegation of damages.").

38. In the absence of a successful underlying claim, however, Plaintiffs are not entitled to damages. Therefore, Plaintiffs' additional stand-alone claim for damages is superfluous and fails to state a claim upon which relief can be granted. As a result, such claim should be, and thus is, dismissed with prejudice.

**B.** **Breach of the Implied Covenant of Good Faith and Fair Dealing**

39. Plaintiffs allege that "[b]y virtue of the fiduciary relationship which existed between the Defendants and the Plaintiffs, an implied duty of good faith and fair dealing existed[.]" (Am. Compl. ¶ 63.) Plaintiffs contend that Defendants breached this implied covenant by unlawfully depriving Plaintiffs of their Series B Preferred and Series D Preferred Stock. (Am. Compl. ¶¶ 63, 65.) Plaintiffs further contend that Inolife breached the implied covenant "by failing to do everything that the relationship presupposed that it will or would do to accomplish its purpose, i.e., create value for its shareholders." (Am. Compl. ¶ 64.)

40. Defendants argue that the implied covenant of good faith and fair dealing arises out of contract, rather than a fiduciary relationship, and that the Amended Complaint fails to allege the existence of a contract. (Defs.' Br. Supp. 11–12.) Defendants further argue that even if the implied covenant could arise out of a fiduciary relationship, Plaintiffs have failed to allege facts to support such a relationship. (Defs.' Br. Supp. 12.) Accordingly, Defendants argue that Plaintiffs' claim for breach of the implied covenant of good faith and fair dealing must be dismissed.

41. Under well-settled law of both North Carolina and New York, the implied covenant of good faith and fair dealing arises out of contract. "In every contract there is an implied covenant of good faith and fair dealing that neither party will do anything which injures the right of the other to receive the benefits of the agreement."

*Bicycle Transit Auth., Inc. v. Bell*, 314 N.C. 219, 228, 333 S.E.2d 299, 305 (1985); *see Pike v. N.Y. Life Ins. Co.*, 901 N.Y.S.2d 76, 82 (N.Y. App. Div. 2010).

42.     The Court notes that it is unclear which state's law applies to Plaintiffs' claim for breach of the implied covenant of good faith and fair dealing. In their briefs, the parties failed to indicate which jurisdiction's law should be applied to such claim. It is probable, however, that New York law applies to the claim as the allegations pertain to the issuance of stock of a New York corporation pursuant to Board resolutions. *See Cable Tel Servs., Inc. v. Overland Contracting, Inc.*, 154 N.C. App. 639, 642, 574 S.E.2d 31, 33 (2002) ("[T]he interpretation of a contract is governed by the law of the place where the contract was made."); *Szymczyk v. Signs Now Corp.*, 168 N.C. App. 182, 187, 606 S.E.2d 728, 733 (2005) ("[T]he test of the place of a contract is as to the place at which the last act was done by either of the parties essential to a meeting of the minds." (quoting *Bundy v. Commercial Credit Co.*, 200 N.C. 511, 515, 157 S.E. 860, 862 (1931))). The Court concludes, however, that it need not determine which state's law applies in ruling on the Motion to Dismiss because, applying the law of either New York or North Carolina, Plaintiffs' claim for breach of the implied covenant of good faith and fair dealing must be dismissed.

43.     "Breach of the implied covenant is a breach of contract claim requiring allegations establishing the requisite elements of a cause of action for breach of contract: (1) formation of a contract between plaintiff and defendant; (2) performance by plaintiff; (3) defendant's failure to perform; and (4) resulting damage." *New Millennium Capital Partners III v. Sys. Evolution, Inc.*, Index No. 600893/2010, 2012

N.Y. Misc. LEXIS 6348, at *29–30 (N.Y. Sup. Ct. Feb. 15, 2012); *see Koch Measurement Devices, Inc. v. Armke*, 2013 NCBC LEXIS 45, at *15 (N.C. Super. Ct. Oct. 14, 2013) ("To state a claim for breach of the implied covenant of good faith and fair dealing, a plaintiff must plead that the party charged has taken action which injured the right of the plaintiff to receive the benefits of *the agreement* and deprived the plaintiff of the fruits of his bargain." (emphasis added)).

44.     Here, the Amended Complaint alleges that the implied covenant arose out of a fiduciary relationship between Plaintiffs and Defendants. Plaintiffs attempt to recast the allegations of the Amended Complaint by arguing in their brief in response to the Motion to Dismiss that the issuance of shares of Series B Preferred and Series D Preferred Stock "arose out of contract." (Pls.' Br. Opp'n Defs.' Mot. Dismiss 4). The Amended Complaint, however, does not allege the existence of a contract between Plaintiffs and Defendants or the breach of such a contract. *See Schorr v. Guardian Life Ins. Co. of Am.*, 843 N.Y.S.2d 24, 25 (N.Y. App. Div. 2007) (affirming lower court's dismissal of plaintiff's claim for breach of the implied covenant of good faith and fair dealing because plaintiff "did not demonstrate the existence of a valid contract from which such a duty would arise"); *Governor's Club, Inc. v. Governors Club Ltd. P'ship*, 152 N.C. App. 240, 251, 567 S.E.2d 781, 789 (2002) (stating that the implied covenant exists in every *contract*).

45.     Further, the Amended Complaint does not allege that Defendants injured Plaintiffs' rights or benefits under a contract. *See Pike*, 901 N.Y.S.2d at 82 ("[A] cause of action based on a breach of the implied covenant of good faith cannot be sustained

where the plaintiff fails to plead that the defendant 'injured [his or her] right to receive the benefits of [the] agreement.'" (alterations in original) (quoting *EBC I, Inc. v. Goldman Sachs & Co.*, 799 N.Y.S.2d 170, 177 (2005))); *RREF BB Acquisitions, LLC v. MAS Props., L.L.C.*, 2015 NCBC LEXIS 61, at *47 (N.C. Super. Ct. June 9, 2015) ("A breach of the implied covenant of good faith and fair dealing 'requires the wrongful intent of a party to deprive another party of its contractual rights.'" (quoting *Hamm v. Blue Cross & Blue Shield of N.C.*, 2010 NCBC LEXIS 17, at *29 (N.C. Super. Ct. Aug. 27, 2010))); *Spitzer-Tremblay v. Wells Fargo Bank, N.A.*, No. COA16-334, 2016 N.C. App. LEXIS 1127, at *12 (N.C. Ct. App. Nov. 15, 2016) ("[I]f there is not any allegation of breach of contract, then it would be illogical for this Court to conclude that plaintiff somehow breached implied terms of the same contracts." (internal quotation marks omitted)).

46.     As Plaintiffs' claim for breach of the implied covenant of good faith and fair dealing is based entirely on an alleged fiduciary relationship between Plaintiffs and Defendants, the Court will address whether the allegations are sufficient to state a claim for breach of fiduciary duty.

47.     Plaintiffs appear to contend that a fiduciary relationship existed between Plaintiffs and Defendants because of their status as shareholders of Inolife.  (*See* Am. Compl. ¶¶ 63−64.)  Pursuant to the internal affairs doctrine, the Court must apply New York law to determine whether a fiduciary relationship exists between Plaintiffs and Inolife.  *Bluebird Corp. v. Aubin*, 188 N.C. App. 671, 680, 657 S.E.2d 55, 63 (2008). Under New York law, it is well settled that a corporation does not owe fiduciary duties

to its shareholders. *Hyman v. N.Y. Stock Exch., Inc.*, 848 N.Y.S.2d 51, 53 (N.Y. App. Div. 2007). Therefore, to the extent the claim for breach of the implied covenant of good faith and fair dealing is in effect a claim for breach of fiduciary duty, the claim must be dismissed because the factual allegations fail to support the existence of a fiduciary relationship between Plaintiffs and Defendants.

48. In sum, Plaintiffs' claim for breach of the implied covenant of good faith and fair dealing fails to state a claim upon which relief can be granted because it fails to allege facts to support the existence of a contract between Plaintiffs and Defendants. The Court notes that the relationship between a corporation and its preferred stockholders is generally contractual in nature. *Strout v. Cross, Austin & Ir. Lumber Co.*, 28 N.E.2d 890, 893 (N.Y. 1940); *Wouk v. Merin*, 120 N.Y.S.2d 546, 549 (N.Y. Sup. Ct. 1953). Nevertheless, in order for Plaintiffs, as alleged holders of Inolife's Preferred Stock, to state a contractual claim against Inolife, Plaintiffs must still allege facts to support the existence of a contract between Plaintiffs and Inolife and that Inolife injured Plaintiffs' right to receive the benefits of such contract.

49. Based on the record before it, and specifically the allegations contained in Plaintiffs' Amended Complaint, the Court concludes that the Motion to Dismiss Plaintiffs' claim for breach of the covenant of good faith and fair dealing should be dismissed.

50. Notwithstanding its conclusion that this claim should be dismissed, "[t]he decision to dismiss an action with or without prejudice is in the discretion of the trial court[.]" *First Fed. Bank v. Aldridge*, 230 N.C. App. 187, 191, 749 S.E.2d 289, 292

(2013).  The Court concludes, in the exercise of its discretion, that dismissal of Plaintiffs' claim for breach of the implied covenant of good faith and fair dealing should be without prejudice to Plaintiffs' right to attempt to reassert such claim through proper factual allegations by way of a motion to amend their Amended Complaint.

### IV.  MOTION FOR ATTORNEYS' FEES

51.     Pursuant to N.C. Gen. Stat. § 75-16.1, Defendants seek their reasonable attorneys' fees incurred in defending against Plaintiffs' UDTP claim.

52.     Plaintiffs filed the Amended Complaint on March 7, 2017 asserting a UDTP claim against Defendants.  Plaintiffs alleged that Defendants stole Plaintiffs' Series B Preferred and Series D Preferred Stock in violation of section 75-1.1.  (Am. Compl. ¶¶ 57, 59.)

53.     On March 10, 2017, counsel for Defendants e-mailed a letter to counsel for Plaintiffs (the "March 10 Letter") requesting that Plaintiffs withdraw their UDTP claim on the basis that it is "well established that claims involving securities cannot support a Chapter 75 claim."  (Second Aff. Matthew H. Mall ¶ 4, Ex. 1.)  The March 10 Letter cited eight North Carolina cases in which the court held that securities transactions cannot be the basis for a UDTP claim.  (Second Aff. Mall Ex. 1.)  The March 10 Letter further stated that Defendants would seek to recover their attorneys' fees incurred in defending against Plaintiffs' UDTP claim under section 75-16.1 if Plaintiffs did not dismiss such claim by March 17, 2017, a week later.  (Second Aff. Mall Ex. 1.)

54. On March 14, 2017, counsel for Plaintiffs e-mailed a letter to counsel for Defendants (the "March 14 Letter") in response to the March 10 Letter. (Second Aff. Mall ¶ 5, Ex. 2.) The March 14 Letter stated that Plaintiffs' UDTP claim involved Defendants' theft of stock as opposed to a securities transaction. (Second Aff. Mall Ex. 2, at 1−2.) The March 14 Letter further contended that the UDTP claim was justified by Plaintiffs' breach of fiduciary duty claim. (Second Aff. Mall Ex. 2, at 1−2 ("There is a claim of breach of fiduciary duty . . . .").) The March 14 Letter cited *KURE Corp. v. Peterson* to support the contention that the UDTP claim was justified despite the exception for securities transactions. 2017 NCBC LEXIS 1 (N.C. Super. Ct. Jan. 5, 2017).

55. Plaintiffs did not voluntarily dismiss their section 75-1.1 claim by March 17, 2017 as demanded by Defendants.

56. On April 6, 2017, Defendants filed the Motions and supporting brief.

57. On April 17, 2017, Plaintiffs voluntarily dismissed without prejudice the UDTP claim.

58. Section 75-16.1 provides that:

> In any suit instituted by a person who alleges that the defendant violated [N.C. Gen. Stat. §] 75-1.1, the presiding judge may, in his discretion, allow a reasonable attorney fee to the duly licensed attorney representing the prevailing party . . . upon a finding by the presiding judge that . . . [t]he party instituting the action knew, or should have known, the action was frivolous and malicious.

N.C. Gen. Stat. § 75-16.1(2). "A claim is frivolous if a proponent can present no rational argument based upon the evidence or law in support of [it]. A claim is malicious if it is wrongful and done intentionally without just cause or excuse or as a

result of ill will." *McKinnon v. CV Indus., Inc.*, 228 N.C. App. 190, 199, 745 S.E.2d 343, 350 (2013) (alteration in original); *see also Phillips & Jordan, Inc. v. Bostic*, 2016 NCBC LEXIS 97, at \*17 (N.C. Super. Ct. Dec. 9, 2016) (quoting *McKinnon*). The decision of whether or not to award attorneys' fees under section 75-16.1 is within the trial court's sole discretion. *McKinnon*, 228 N.C. App. at 199, 745 S.E.2d at 350. When the trial court awards fees under section 75-16.1, however, it must make specific findings of fact "that (1) the plaintiff knew, or should have known, the action was frivolous and malicious; and (2) the attorney's fee awarded is reasonable." *Id.* (internal quotation marks omitted).

59.    Defendants are the prevailing party within the meaning of section 75-16.1 because Plaintiffs voluntarily dismissed the UDTP claim. *See Bryson v. Sullivan*, 330 N.C. 644, 664 & n.5, 412 S.E.2d 327, 338 & n.5 (1992) (holding that defendant was the prevailing party within the meaning of N.C. Gen. Stat. § 6-21.5 when plaintiffs voluntarily dismissed their action with prejudice and stating that defendant would have been the prevailing party even if the dismissal had been without prejudice, expressly overruling *Kohn v. Mug-A-Bug*, 94 N.C. App. 594, 380 S.E.2d 548 (1989), which held that there was no prevailing party when plaintiffs took a voluntary dismissal without prejudice); *BB&T Boli Plan Tr. v. Mass. Mut. Life Ins. Co.*, 2016 NCBC LEXIS 36, at \*24 (N.C. Super. Ct. Apr. 29, 2016) ("Although [plaintiff] voluntarily dismissed its claims without prejudice, [defendant] may still be considered the 'prevailing party' for purposes of section 6-21.5.").

60. The Court concludes that the interpretation of "prevailing party" under section 75-16.1 should be, and is the same as, that under section 6-21.5. Therefore, Plaintiffs' voluntary dismissal without prejudice of their UDTP claim on April 17, 2017 means that Defendants are the "prevailing part[ies]" for purposes of section 75-16.1.

61. Defendants argue that Plaintiffs knew or should have known that their UDTP claim was frivolous because "[u]nder longstanding North Carolina Supreme Court law, securities transactions cannot form the basis of a[] UDTP[] claim" and "Plaintiffs' UDTP[] claim is based on securities transactions, namely the cancellation and conversion of Series B and Series D Preferred shares of Inolife stock[.]" (Defs.' Br. Supp. 5.) Defendants further argue that Plaintiffs knew or should have known that their UDTP claim was malicious because Defendants gave Plaintiffs an opportunity to withdraw such claim after explaining the securities exception, but Plaintiffs still waited to dismiss the claim until after Defendants filed a motion and brief. (Defs.' Reply Supp. Mot. 2.)

62. The Court finds that, while Plaintiffs' counsel may not have known of the well settled securities exception at the time the Amended Complaint was filed, at least as of March 14, 2017—the date on which Plaintiffs' counsel responded to Defendants' March 10 Letter to withdraw their UDTP claim—Plaintiffs knew or should have known that their UDTP claim was frivolous and malicious. As explained by Defendants to Plaintiffs in the March 10 Letter, it is well settled under North Carolina law that securities transactions cannot serve as the basis for a claim under

section 75-1.1. *E.g., Skinner v. E. F. Hutton & Co.*, 314 N.C. 267, 275, 333 S.E.2d 236, 241 (1985); *Sterner v. Penn*, 159 N.C. App. 626, 633, 583 S.E.2d 670, 675 (2003). As stated by our Supreme Court, the rationale for the securities exception is

> that to extend the Act to securities transactions would create overlapping supervision, enforcement, and liability in this area, which is already pervasively regulated by state and federal statutes and agencies. . . .
>
> . . . .
>
> . . . Another reason is that the legislature simply did not intend for the trade, issuance and redemption of corporate securities or similar financial instruments to be transactions "in or affecting commerce" as those terms are used in [N.C. Gen. Stat.] § 75-1.1(a). Subsection (b) of this section of the Act defines the term "commerce" to mean "business activities." . . .
>
> Issuance and redemption of securities are not in this sense business activities. The issuance of securities is an extraordinary event done for the purpose of raising capital in order that the enterprise can either be organized for the purpose of conducting its business activities or, if already a going concern, to enable it to continue its business activities. Subsequent transfer of securities merely works a change in ownership of the security itself. Again, this is not a business activity of the issuing enterprise.

*Hajmm Co. v. House of Raeford Farms, Inc.*, 328 N.C. 578, 593−94, 403 S.E.2d 483, 493 (1991).

63. Here, Plaintiffs' entire Amended Complaint is based on Inolife's alleged issuance to Plaintiffs of convertible Series B Preferred and Series D Preferred Stock. Plaintiffs allege that they were validly issued Preferred Stock in exchange for services provided to Inolife and that Inolife has refused to return their shares, unlawfully cancelled their shares, and refused to convert their preferred shares into common shares. Although Plaintiffs argued in their counsel's March 14 Letter that "the

allegations extend beyond the purchase and sale of securities," (Second Aff. Mall Ex. 2, at 2), the securities exception is not limited to the purchase and sale of securities—"[s]ecurities transactions are related to the creation, transfer, or retirement of capital." *Hajmm Co.*, 328 N.C. at 594, 403 S.E.2d at 493; *see also Sterner*, 159 N.C. App. at 633, 583 S.E.2d at 675 ("[T]he individual's transactions with the defendant were plainly securities-related activities." (internal quotation marks omitted)).

64. Plaintiffs' reliance on *KURE Corp.* does not affect the Court's conclusion that Plaintiffs knew or should have known that the UDTP claim was frivolous and malicious. In *KURE Corp.*, defendants moved for sanctions under Rule 11 on the grounds that plaintiff's UDTP claim was not warranted by existing law or a good faith argument for extending, modifying, or reversing existing law because North Carolina law holds that securities transactions are not actionable under section 75-1.1. 2017 NCBC LEXIS 1, at *12. Judge Bledsoe concluded that—despite the fact that it is well settled in North Carolina that securities transactions are beyond the scope of section 75-1.1—plaintiff's belief that the claim was warranted by existing law was reasonable because the allegations extended beyond the purchase and sale of securities and North Carolina courts have upheld UDTP claims on the basis of a breach of fiduciary duty claim. *Id.* at *13−14.

65. Here, although Plaintiffs contend in the March 14 Letter that they have asserted a breach of fiduciary duty claim, Plaintiffs did not bring a breach of fiduciary duty claim and failed to allege facts to substantiate the existence of a fiduciary relationship. The only reference to a fiduciary relationship appears with regard to

Plaintiffs' claim for breach of the implied covenant of good faith and fair dealing and, as discussed above, is both factually and legally unsupported. Moreover, even if the Amended Complaint did assert a breach of fiduciary duty claim, securities transactions are beyond the scope of section 75-1.1 whether such transactions give rise to a breach of fiduciary duty claim or not.

66. In addition to the findings above, Plaintiffs' statements in the March 14 Letter, Plaintiffs' failure to offer just cause or excuse, and counsel for Plaintiffs' statements during the hearing on the Motions further lead the Court to conclude that Plaintiffs knew maintaining the UDTP claim after March 14 was wrongful and done intentionally without just cause or excuse. The March 14 Letter stated, in part:

> There is nothing frivolous and malicious about the [UDTP] claim. In plain English, I am eagerly awaiting to learn why the Defendants believe that they can commit larceny and theft with impunity.
>
> If the Defendants are so concerned about the [UDTP] claim, which is warranted in existing law, then perhaps they would want to consider providing the Plaintiffs with paper certificates for the Preferred Series B and D shares of stock rather than [Inolife] waging peril to the Plaintiffs' legitimate claims, its continuing presageful behavior, and threats to some of the Plaintiffs of criminal action against the Plaintiffs, which is entirely specious, spurious, and fallacious.

(Second Aff. Mall Ex. 2, at 2–3.) Further, in their response brief to the Motions, Plaintiffs did not contest Defendants' Motion for Attorneys' Fees. During the hearing on the Motions, the Court inquired of counsel for Plaintiffs as to why he waited until April 17, 2017—over one month after Defendants sent the March 10 Letter and eleven days after Defendants filed the Motions (which included the Motion to Dismiss the UDTP claim)—to voluntarily dismiss that claim. Counsel for Plaintiffs stated that

he was waiting to see if Defendants would in fact file a motion to dismiss and failed to provide any just cause or excuse for maintaining the UDTP claim after March 14, 2017.

67. Therefore, based on the foregoing findings, the Court concludes that as of March 14, 2017, Plaintiffs knew or should have known that their UDTP claim was frivolous and malicious. Plaintiffs knew or should have known that their claim was frivolous under the well-settled exception for securities transactions from section 75-1.1 claims. The statements made in Plaintiffs' counsel's March 14 Letter, combined with his failure to offer just cause or excuse and his admissions made at the hearing on the Motion for Attorneys' Fees, makes clear that Plaintiffs' counsel knew or should have known that the continuation of the claim following receipt of Defendants' March 10 Letter was "wrongful and done intentionally without just cause or excuse or as a result of ill will." *McKinnon*, 228 N.C. App. at 199, 745 S.E.2d at 350.

68. The Court concludes, in its discretion, that Defendants should be awarded their reasonable attorneys' fees incurred in defending against the UDTP claim after March 14, 2017. When awarding attorneys' fees under section 75-16.1, "the trial court must make findings supporting its award, including findings regarding the time and labor expended, the skill required to perform the services rendered, the customary fee for like work, and the experience and ability of the attorney." *Id.* at 200, 745 S.E.2d at 351 (internal quotation marks omitted).

69. Defendants have not filed any supporting documents regarding the amount of time and expense incurred by their counsel in defending against the UDTP claim.

At the hearing on the Motions, counsel for Defendants indicated that they believed a more proper procedure than filing such documents with the motion would be to file a petition for fees and costs after the Court had determined whether such fees were properly awarded. The Court, in its discretion, believes that this is an appropriate bifurcated procedure in this case.

70. Accordingly, Defendants shall prepare a petition supported by proper affidavits and other documentation evidencing the amount of fees and costs they contend is reasonable and to which they are entitled. In this regard, the Court notes that the Motions, and the briefs filed by Defendants in support of the Motions, contain arguments regarding a host of subjects beyond Plaintiffs' UDTP claim. Defendants' counsel are encouraged to carefully segregate their time and costs associated strictly and solely with opposing Plaintiffs' UDTP claim after March 14, 2017.

71. Further, within sixty days of this Order and Opinion, Defendants' counsel shall submit their petition and supporting documentation to Plaintiffs' counsel for review and consideration. The parties will be allowed a period of thirty days following Plaintiffs' counsel's receipt of the petition and supporting documentation to attempt a voluntary resolution of the matter. In the absence of such resolution, Defendants' counsel may, after the passage of thirty days following submission to Plaintiffs' counsel, file the petition and supporting documentation with the Court.

## V.    CONCLUSION

72. For the foregoing reasons, the Court **DENIES as moot** the Motion to Dismiss as to the UDTP claim and the attorneys' fees and costs claim, **GRANTS** the

Motion to Dismiss in all other respects, **GRANTS** the Motion for Attorneys' Fees, and **ORDERS** as follows:

A. The Motion to Dismiss as to Plaintiffs' UDTP claim and attorneys' fees and costs claim is **DENIED as moot**;

B. Plaintiffs' claim for damages is **DISMISSED with prejudice**;

C. Plaintiffs' claim for breach of the implied covenant of good faith and fair dealing is **DISMISSED without prejudice**; and

D. Defendants are entitled to recover from Plaintiffs their reasonable attorneys' fees and costs incurred in defending against Plaintiffs' UDTP claim after March 14, 2017, such amount to be determined by the Court.

 **SO ORDERED**, this the 22nd day of May, 2017.


      /s/ Michael L. Robinson
      Michael L. Robinson
      Special Superior Court Judge
       for Complex Business Cases